IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 22-241

| | |
|---|---|
| DAVID WEAVER, | |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| THE CITY OF RALEIGH; and OFFICER OMAR I. ABDULLAH, OFFICER TAYLORE LEGGETT and SERGEANT WILLIAM ROLFE in their individual capacities, | JURY TRIAL DEMANDED |
| *Defendants*. | |

NOW COMES Plaintiff David Weaver, demanding a jury trial and alleging the following against the Defendants:

## I.  INTRODUCTION

1.      David Weaver spent 3.5 years wrongfully incarcerated because drugs were planted on him by officers of the Raleigh Police Department ("RPD").

2.      Initially, Mr. Weaver was wrongfully arrested based on evidence fabricated by Officer Omar Abdullah in conspiracy with a confidential informant, Dennis Williams[1].

3.      After Mr. Weaver's arrest, Officer Abdullah pressured Mr. Weaver to work as a confidential informant for the RPD. Mr. Weaver refused.

---

[1] Mr. Williams is currently being prosecuted by the Wake County District Attorney's office for obstruction of justice arising from his role in fabricating heroin charges and evidence against numerous individuals.

4.      In response, Officer Abdullah and Officer Taylore Leggett strip-searched Mr. Weaver and planted 36 grams of crack cocaine in his underwear.

5.      Based on the planted cocaine and fabricated evidence, Mr. Weaver was wrongly convicted of trafficking cocaine and sentenced to 35-51 months in prison.

6.      On March 14, 2022, Superior Court Judge Paul Ridgeway granted a Motion for Appropriate Relief ("MAR") and entered an Order vacating Mr. Weaver's conviction.

7.      Plaintiff David Weaver brings this action for compensatory damages and punitive damages pursuant to North Carolina law, 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## II.      PARTIES

8.      Plaintiff David Weaver is a resident of Wake County, North Carolina.

9.      Defendant City of Raleigh (the "City") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Raleigh Police Department ("RPD"). Employees of RPD are employees and agents of the City, which bears legal responsibility under state law for the negligent acts and omissions of RPD's employees in the course of their employment. The City is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.      Further, on information and belief, the City of Raleigh, at the time of Mr. Weaver's wrongful arrest and prosecution, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to N.C.G.S. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the City and its agents for any judgment against it or its agents named in this action.

2

11.     All individual Defendant RPD officers sued herein are entitled under North Carolina law to indemnification by the City of Raleigh for any liability arising from conduct described herein.

12.     Officer Omar Abdullah is a police officer formerly employed by the Raleigh Police Department, being sued in his individual capacity. Officer Abdullah was placed on administrative leave in September 2020 and his employment with the City terminated on October 28, 2021.

13.     Sergeant William Rolfe is a police officer employed by the Raleigh Police Department, being sued in his individual capacity.

14.     Officer Taylore Leggett is a police officer formerly employed by the Raleigh Police Department, being sued in his individual capacity.

### III.     JURISDICTION

15.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Plaintiff's claims arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

16.     Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### IV.     VENUE

17.      Venue is proper in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where

Defendants reside and maintain their relevant places of business and where the actions complained of herein occurred.

## V.    FACTS

**A.    The RPD VICE Unit and the Use of Confidential Informants**

18.    The RPD VICE unit is tasked with, among other things, enforcing drug laws.

19.    Officer Omar Abdullah was a police officer in the RPD VICE unit at the time of Plaintiff David Weaver's wrongful arrest.

20.    Sergeant William Rolfe was Officer Abdullah's supervisor.

21.    The RPD VICE unit often recruits confidential informants to assist with or develop investigations.

22.    Confidential informants are typically recruited after they have been arrested and charged with a crime.

23.    Confidential informants aid law enforcement in investigations and arrests of other people. In exchange for their services, informants have an expectation that they will receive leniency on their own charge and/or that they will receive financial compensation for their work as a confidential informant.

24.    Confidential informants, under the RPD VICE officers' guidance, are tasked with finding individuals from whom to purchase narcotics.

25.    Once the RPD VICE officers identify a target, confidential informants are given pre-recorded "buy money" and instructed to make a buy.

26.    Any funds provided to informants are approved and distributed by the City Finance Department, which then releases those funds to the Chief of Police, who releases them to the Division commander and then to the supervisor of the officer working with the confidential

4

informant.

27.     Each time funds are disbursed to confidential informants, RPD policy requires: (1) a record of the transaction with the date and time the money was received, (2) signatures of the officers who witnessed the distribution and payment of funds, and (3) signatures of both the officer and informant involved on the receipt of funds sheet.

28.     The controlled buy is then monitored by RPD VICE officers, who are staged in the area, using video and audio surveillance.

29.     After the buy is completed, the RPD VICE officers arrest the target or apply for a search or arrest warrant based on the alleged drug sale.

**B.     RPD VICE Recruits Dennis Leon Williams, Jr., an Unreliable Confidential Informant**

30.     In the fall of 2018, RPD VICE officers arrested a target who the officers suspected of selling cocaine.

31.     This individual was arrested after making a sale to a confidential informant employed by the RPD VICE unit.

32.     The individual sold the confidential informant crushed aspirin and claimed it was cocaine.

33.     The individual was arrested and charged with selling fake drugs.

34.     The individual's name is Dennis Leon Williams, Jr. ("Informant Williams").

35.     After arresting Mr. Williams, RPD VICE Officers David Chadwick Nance and Omar Abdullah recruited Mr. Williams to work as a confidential informant with the RPD.

36.     Officers Nance and Abdullah gave Informant Williams the nickname "Aspirin" because he had sold the confidential informant aspirin while claiming it was cocaine.

37.     Informant Williams had a lengthy criminal record and prior arrests for violent

felonies.

38.     On August 16, 2018, Informant Williams was approved to work as a confidential informant for the RPD.

39.     From August 16, 2018, through May 21, 2020, Informant Williams, Officer Abdullah and the RPD VICE unit conspired to make at least 29 separate controlled buys, most if not all of which involved fake drugs or real narcotics that were planted on the alleged sellers by the RPD VICE officers and Informant Williams.

40.     Approximately 15 of these controlled buys resulted in cases that were dismissed because fake heroin was planted on individuals who were alleged to have participated in controlled sales.

41.     On information and belief, all of the individuals who were arrested as a result of the controlled buys carried out by RPD VICE officers and Informant Williams have had their criminal charges dismissed or their convictions vacated.

**C.    The RPD VICE Officers' Conspiracy**

42.     The RPD VICE officers always worked as a team when making controlled buys and carrying out raids and arrests.

43.     Before each fabricated buy, the RPD VICE officers including Sergeant Rolfe and Officers Abdullah, Monroe, Rattelade and Gay, met and discussed the plan for the buy.

44.     Informant Williams was outfitted with at least one electronic surveillance device that recorded video and audio of the controlled buys.

45.     RPD VICE officers Rolfe, Monroe, Rattelade and Gay staged the buy area and listened to and observed the transaction.

46.     Officer Abdullah claimed he searched Informant Williams before each alleged buy

6

and never located any contraband on his person.

47.     Informant Williams shielded the electronic surveillance device, in violation of RPD procedure, so each alleged buy could not be video recorded.

48.     Officer Abdullah claimed he also searched Informant Williams after each controlled buy and never located any unlawful contraband on his person.

49.     After each alleged buy, Officer Abdullah and Informant Williams planted alleged narcotics on individuals they then wrongfully charged with drug trafficking or possession.

50.     Officer Abdullah, against RPD policy on the Management of Informants, met alone with Informant Williams, before and after buys.

51.     Officer Abdullah always paid Informant Williams without any other officers present in violation of RPD policy requiring witnesses to be present for informant payments.

52.     Upon information and belief, RPD VICE officers, including Sergeant Rolfe and other RPD VICE officers including Officers Ouellette and Rattelade, assisted in this scheme by signing receipt of informant funds sheets, falsely stating that they had witnessed payment of informant funds to Informant Williams.

53.     After each fabricated buy, Sergeant Rolfe and Officers Abdullah, Monroe, Rattelade and Gay attended a debriefing where they would view and process the evidence recovered, including the planted drugs.

54.     RPD VICE officers, including Sergeant Rolfe, were aware of and participated in Officer Abdullah's scheme and failed to intervene to stop the continued use of Informant Williams as a confidential informant or the continued wrongful searches, seizures, and prosecutions based on fabricated evidence.

**D.     Plaintiff David Weaver Is Wrongfully Arrested Based on Fabricated Evidence**

7

55.     On August 22, 2018, Officer Abdullah falsely claimed that Plaintiff David Weaver sold 2.84 grams of crack cocaine to Informant Williams for $40.00 during a controlled buy.

56.     In 2018, 2.84 grams of crack cocaine would have cost roughly $170.00, or approximately $60.00 per gram.

57.     Informant Williams was equipped with an undercover camera to record the controlled buy involving Mr. Weaver.

58.     Because Informant Williams shielded the undercover camera during the controlled buy, the majority of the video consists of a dark screen and contains no audio or video evidence of a sale.

59.     Mr. Weaver is not depicted on the video.

60.     Mr. Weaver never sold cocaine to Informant Williams.

61.     Officer Abdullah and Informant Williams conspired to produce cocaine and falsely alleged that the cocaine had been sold by Mr. Weaver.

62.     On information and belief, Sergeant Rolfe supervised the controlled buy and observed the live video and audio feed—which depicted no sale—alongside Officer Abdullah who observed the same.

63.     Officer Abdullah stated that he searched Informant Williams before the controlled buy and located no contraband on his person.

64.     Sergeant Rolfe authorized the payment of informant funds to Informant Williams.

65.     Officer Rattelade stated that he witnessed the payment of informant funds to Informant Williams.

66.     Based on the fabricated allegations and fabricated evidence, Officer Abdullah

applied for and received a warrant to arrest Mr. Weaver.

67.     On information and belief, this warrant was approved by Sergeant Rolfe.

68.     The next day, August 23, 2018, Officer Abdullah and the RPD VICE unit along with the Selective Enforcement Unit ("SEU") arrested Mr. Weaver outside of 717 Martin Street.

69.     The SEU officers, including Officer D.C. Twiddy, searched and frisked Mr. Weaver, including his crotch area, and located marijuana in his back pocket.

70.     Mr. Weaver was then transported to the RPD substation at 1601 Cross Link Road by a marked patrol unit.

71.      The RPD officers who escorted Mr. Weaver also searched and frisked him. They found no narcotics or any other contraband during this search.

72.     Mr. Weaver was held in a detention area near the front desk of the RPD substation and was then transported to a conference room by Officer Abdullah.

73.     Officer Abdullah asked Mr. Weaver to work for him as a confidential informant.

74.     Mr. Weaver refused and asked Officer Abdullah to take him to booking if Officer Abdullah was going to charge him with possession of marijuana.

75.     Officer Abdullah then returned Mr. Weaver to the detention area.

76.     Approximately 15 minutes later, Officer Abdullah stated that he wanted to strip search Mr. Weaver because he claimed Mr. Weaver had drugs on him.

77.     At the time of his arrest, Mr. Weaver was 5'8" tall and weighed approximately 137 pounds.

78.     Officer Abdullah, accompanied by Officer Leggett, took Mr. Weaver into a bathroom next to the detention area.

79.     Officer Abdullah instructed Mr. Weaver to undress and to hand his clothes to Officer

9

Leggett.

80.    Mr. Weaver complied with these instructions and handed over his clothes, including his underwear, to Officer Leggett who then passed the clothes to Officer Abdullah.

81.    Officers Abdullah and Leggett turned their backs to Mr. Weaver as they examined the clothes.

82.    Officer Abdullah produced a brown paper towel and stated, "yeah we are gonna charge him with this."

83.    Officer Abdullah planted 36 grams of crack cocaine in the brown paper towel—and claimed he found it "tucked inside the subject's underwear"—with the knowledge and assistance of Officer Leggett.

84.    Mr. Weaver was taken back to the detention area where he observed Officer Abdullah photograph and weigh the substance in the brown paper towel.

85.    Mr. Weaver was then transferred to the Wake County Detention Center and eventually to the Wake County Courthouse.

86.    Mr. Weaver's first appearance in court was the first time he learned that he was being charged with possession and sale of cocaine.

87.    Because the crack cocaine planted by Officer Abdullah weighed over 28 grams, Mr. Weaver was charged with Trafficking in Cocaine by Possession.

88.    According to Officer Meghan Gay, Officer Abdullah knew that an arrest for trafficking would result in a larger payment to his confidential informant, Informant Williams.

89.    Officer Rattelade, in his interview with the State Bureau of Investigation ("SBI"), stated that he would not be surprised if Officer Abdullah and Informant Williams were both benefitting from their relationship.

10

90.     Sergeant Rolfe approved Officer Abdullah's incident reports for the fabricated sale and the fabricated trafficking charges.

**E.     Mr. Weaver Proclaims His Innocence, But After Spending a Year in Jail, He Pleads Guilty**

91.     Mr. Weaver was initially assigned a Wake County public defender for legal representation related to the charges described above.

92.     After Mr. Weaver learned of the charges against him, he told his public defender that he was innocent and that he had never sold or possessed cocaine.

93.     Mr. Weaver told his public defender that Officers Abdullah and Leggett strip searched him and planted cocaine on him.

94.     Mr. Weaver's bond was set at $250,000, an amount he could not pay.

95.     On January 22, 2020, after over 16 months in custody, facing 102 months in prison if convicted at trial, and on his third lawyer, Mr. Weaver pled guilty to trafficking cocaine and received a sentence of 35-51 months in prison.

**F.     Mr. Weaver Is Released from Prison and His Conviction Is Vacated**

96.     On March 4, 2022, the Wake County District Attorney, after reviewing Mr. Weaver's file and the buy video of the alleged sale, consented to a Motion for Appropriate Relief to vacate Mr. Weaver's conviction.

97.     On March 13, 2022, Mr. Weaver completed his sentence and was released from prison.

98.     On March 14, 2022, Superior Court Judge Paul Ridgeway granted the consent motion for appropriate relief and entered an Order vacating Mr. Weaver's conviction.

11

## VI.  **INJURIES AND DAMAGES**

99.     This action seeks damages on behalf of Plaintiff David Weaver for his loss of
liberty, extraordinary emotional pain and suffering, and injuries to his person that Plaintiff was
forced to endure as a consequence of Defendants' decidedly wrongful actions.

100.    Plaintiff has suffered, and continues to suffer, severe and ongoing damages,
specifically physical pain and injuries, serious psychological and emotional damage, and loss of
quality of life.

101.    The acts and omissions of Defendants entitle Plaintiff to compensatory and
punitive damages.

## VII.  **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Fourth Amendment: Malicious Prosecution or Prosecution Without Probable Cause**
**under 42 U.S.C § 1983**
**against Officers Abdullah, Rolfe and Leggett)**

102.    Plaintiff David Weaver repeats, reiterates, and re-alleges each and every
allegation contained in the above paragraphs with the same force and effect as if fully set forth
herein.

103.    At all times relevant to this action, Mr. Weaver had the right under the Fourth
Amendment to not be prosecuted without probable cause.[2]

104.    Officers Abdullah, Rolfe and Leggett, despite knowing that probable cause did
not exist to arrest and prosecute Mr. Weaver, intentionally, recklessly and with malice caused
Mr. Weaver to be arrested, held on bail and prosecuted.

---

[2] *See Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) ("More specifically, 'we have
required that [1] the defendant have 'seized plaintiff pursuant to legal process that was not
supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's
favor.'" (quoting *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005)).

12

105.     Defendants knew that Mr. Weaver had not sold nor possessed cocaine.

106.     Officers Abdullah and Rolfe knew that Informant Williams falsely claimed he had purchased cocaine from Mr. Weaver.

107.     Officers Abdullah and Rolfe were aware that Informant Williams had covered his body camera and that as a result there was no video or audio evidence of any sale.

108.     The following day, after Mr. Weaver refused to cooperate and work as an informant, Officers Abdullah and Leggett planted cocaine on Mr. Weaver.

109.     Defendants intentionally and unlawfully provided false or misleading information and made material omissions in their statements to the District Attorney and the Court.[3]

110.     As a result of Defendants' acts, Mr. Weaver was arrested, charged and prosecuted without probable cause.

111.     Mr. Weaver is innocent.

112.     All of the charges against Mr. Weaver were dismissed.

113.     As a direct and proximate result of the Defendants' acts, Mr. Weaver was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

---

[3] *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) ("An officer who lies to secure a probable-cause determination can hardly be called reasonable. Likewise, where an officer provides misleading information to the prosecuting attorney or where probable cause is 'plainly lacking,' the procedural steps taken by an officer no longer afford a shield against a Fourth Amendment claim. This is because 'legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement.'" (internal quotations omitted)).

13

## SECOND CLAIM FOR RELIEF
### (Fourth and Fourteenth Amendment: Fabrication of Evidence under 42 U.S.C § 1983 against Officers Abdullah and Leggett)

114.    Plaintiff David Weaver repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

115.    Mr. Weaver has a fundamental right to be free from fabrication of evidence pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983.[4]

116.    Officer Abdullah falsely stated in a warrant application that Mr. Weaver had sold cocaine to Informant Williams.

117.    Officer Abdullah knew that these statements were false.

118.    Officer Abdullah conspired with Officer Leggett to plant cocaine on Mr. Weaver.

119.    Despite knowing that the cocaine was planted and that the sale and trafficking allegations were fabricated, Defendants forwarded the false allegations and false information to the District Attorney.

---

[4] *Willis v. Blevins*, 966 F. Supp. 2d 646, 657 (E.D. Va. 2013) ("The Fourth Circuit has recognized that the fabrication of evidence by an officer 'acting in an investigating capacity' constitutes a violation the Fourth Amendment." (quoting *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005))); *see also Gilliam v. Sealey*, 932 F.3d 216, 241 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2641, 206 L. Ed. 2d 713 (2020) ("[A]n individual has a constitutional right not to be deprived of liberty as a result of the intentional, bad-faith withholding of evidence by an investigating officer."); *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (holding that it was clearly established in 1982 that when police intentionally withhold or destroy evidence, or otherwise act in bad faith, their actions violate the due process rights of a criminal defendant).

14

120.     The fabrication of evidence by the individual Defendants violated Mr. Weaver's rights and caused him to be wrongfully arrested, charged and incarcerated, causing him to suffer the injuries and damages described above.

### THIRD CLAIM FOR RELIEF
### (Fourth and Fourteenth Amendment: Failure to Intervene under 42 U.S.C § 1983 against Officer Leggett)

121.     Plaintiff David Weaver repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

122.     Officer Leggett was present for and observed the aforementioned unlawful conduct and had a duty to intervene and prevent such conduct but failed to intervene.

123.     Accordingly, Officer Leggett, by failing to intervene, violated Mr. Weaver's rights under the Fourth and Fourteenth Amendments.

124.     Officer Leggett knew that Mr. Weaver did not possess cocaine and that Mr. Weaver was charged with trafficking cocaine that was planted on him.

125.     Officer Leggett failed to intervene in the false arrest and continued prosecution of Mr. Weaver despite knowing that the charges against Mr. Weaver were fabricated and that Mr. Weaver's arrest occurred without probable cause.

126.     As a direct and proximate result of this unlawful conduct, Mr. Weaver sustained the injuries and damages described above.

### FOURTH CLAIM FOR RELIF
### (Malicious Prosecution under North Carolina State Law against Officers Abdullah, Rolfe and Leggett)

127.     Plaintiff David Weaver repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

15

128.     By their conduct described herein and acting under color of state law, Defendants are liable to Mr. Weaver under North Carolina law for the violation of his constitutional right to be free from malicious prosecution.[5]

129.     Officers Abdullah, Rolfe and Leggett, despite knowing that probable cause did not exist to arrest and prosecute Mr. Weaver, intentionally, recklessly and with malice caused Mr. Weaver to be arrested, held on bail and prosecuted.

130.     Defendants knew that Mr. Weaver had not sold or possessed cocaine.

131.     Officers Abdullah and Rolfe knew that Informant Williams falsely claimed that he had purchased cocaine from Mr. Weaver.

132.     Officers Abdullah and Rolfe were aware that Informant Williams had covered his body camera and that there was no video or audio evidence of any sale.

133.     The following day, after Mr. Weaver refused to cooperate and work as an informant, Officers Abdullah and Leggett planted cocaine on Mr. Weaver.

---

[5] *See Braswell v. Medina*, 255 N.C. App. 217, 228-29, 805 S.E.2d 498, 507 (2017) ("As shown above, Braswell's complaint alleged facts showing that (1) the Officers initiated or participated in the criminal proceeding against him; (2) they lacked probable cause to believe he committed the offense . . .; (3) they acted with malice; and (4) the prosecution was terminated in Braswell's favor. 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights. Moreover, '[m]alice can be inferred from the want of probable cause alone." Here, Braswell has adequately alleged malice by pleading facts showing that the Officers not only lacked probable cause to believe he was guilty of the crime for which he was ultimately charged but also concealed and fabricated evidence in order to cause him to be prosecuted for that offense. Accordingly, Braswell has properly stated claims for malicious prosecution against the Rocky Mount Defendants under North Carolina law, and the trial court erred in dismissing these claims." (internal quotations and citations omitted)); *see also Chidnese v. Chidnese*, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011) ("Treating these allegations as true, these facts can be construed to state that [the defendant] procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution.").

16

134. Defendants intentionally provided false or misleading information and made material omissions in their statements to the District Attorney and the Court.

135. As a result of Defendants' acts, Mr. Weaver was arrested, charged and prosecuted without probable cause, causing him to suffer the injuries and damages described above.

136. The prosecution of Mr. Weaver was ultimately terminated when all the charges against him were dismissed.

137. As a direct and proximate result of the Defendants' acts, Mr. Weaver was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

**FIFTH CLAIM FOR RELIEF**
**(Unreasonably Prolonged Detention in violation of the Fourth Amendment**
**and 42 U.S.C. § 1983**
**against Officers Abdullah, Rolfe and Leggett)**

138. Plaintiff David Weaver repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

139. Officers Abdullah, Rolfe and Leggett violated Mr. Weaver's rights under the Fourth Amendment and Fourteenth Amendments of the United States Constitution.

140. Defendants continued to assist in the prosecution of Mr. Weaver even after learning that Informant Williams, along with Officer Abdullah and other VICE officers, had fabricated evidence and charges against numerous other individuals.

141. Defendants failed to review the body camera video footage of the alleged sale.

142. Defendants failed to inform the District Attorney, the Court or Mr. Weaver's criminal defense counsel that Informant Williams had been discredited as an informant, that Informant Williams had produced fake heroin in numerous other cases in conspiracy with the

RPD VICE officers, and that charges resulting from Informant Williams' other controlled buys had been dismissed.

143.     Informant Williams was suspended by RPD as an informant on May 22, 2020.

144.     At the time that Informant Williams was suspended by RPD, Defendants should have notified the District Attorney of Informant Williams' involvement as a confidential informant in Mr. Weaver's case.

145.     Defendants' failure to inform the District Attorney, the Court or Mr. Weaver's criminal defense counsel caused Mr. Weaver to spend an additional 23 months incarcerated.

**SIXTH CLAIM FOR RELIEF**
**(Fourth Amendment: *Monell* Liability for Unconstitutional RPD Policies and Omissions of RPD VICE and Management of Informants, 42 U.S.C § 1983 against the City of Raleigh)**

146.     Plaintiff David Weaver repeats and re-alleges each allegation contained in the preceding paragraphs as if fully set forth herein.

147.     The City of Raleigh employs or employed the following municipal actors and final policymakers for the policies, customs and practices of the RPD: Chief Estella Patterson, Former Chief of Police Cassandra Deck-Brown, City Manager Adams-David Marchell, and former City Manager Ruffin Hall (collectively, "Policymakers").

148.     Defendants' fabrication of evidence and resulting constitutional violations in Mr. Weaver's case were the direct and proximate result of the existing policies or omissions of the RPD established by the Policymakers.

149.     Specifically, the City, by and through the Policymakers, failed to supervise or train and failed to institute the proper policies relating to RPD officers and management and the RPD's use of confidential informants as follows:

a. The RPD has a policy of not requiring supervisor or officer review of video footage taken of undercover controlled buys. After Informant Williams was suspended, RPD began to review his buy videos and discovered that none of the video footage actually depicted a sale and that the vast majority of the footage showed only a dark screen. Lieutenant Jennings Bunch confirmed in his SBI interview that the RPD has no policy requiring supervisor review of video footage of controlled buys. The City's Policymakers were aware that the failure to review undercover buy video could result in informants and officers fabricating charges resulting in false arrests or false allegations.

b. The RPD has a policy of not recording—whether by audio or video recordings—any officer interaction with confidential informants. Specifically, RPD VICE officers are not equipped with body cameras. A policy requiring recording of all interactions with informants would have prevented the conspiracy between Officer Abdullah, the RPD VICE team, and Informant Williams, because the video footage would have shown Officer Abdullah repeatedly violating RPD policy (On the Management and Use of Informant Funds) by meeting with Informant Williams with no other officers present, and the video or audio would have depicted the fabrication or planting of evidence on Mr. Weaver and other innocent individuals.

150. These omissions of policy and failure to supervise or train relating to monitoring and supervising informants and RPD VICE officers led directly to the fabrication of evidence and resulting arrest of Mr. Weaver.

19

151. In *Washington, et al. v. City of Raleigh et al.*, 21-CV-194, the plaintiff's expert in that case, Howard Jordan (former City of Oakland Chief of Police), recommended extensive policy and practice changes to the RPD. These policy recommendations, found in Mr. Jordan's report entitled Report of Plaintiffs' Police Practices Expert Federal Rule 26(a)(2)(B) and dated September 12, 2021, included:

    a. Requiring RPD supervisors to review undercover buy footage. *See Washington, et al. v. City of Raleigh et al.*, 21-CV-194 ("In cases where video surveillance footage is used, the Managing Officer and their immediate supervisor should review such surveillance footage for accuracy and consistency. This information should be documented in the accompanying crime report.").

    b. Requiring all RPD officers to audio record their interactions with confidential informants. *Id.*

152. On information and belief, the above policy recommendations made to the City by expert Howard Jordan have not been implemented by the RPD, and these policies, or lack thereof, may continue to lead to the fabrication of evidence and wrongful searches and arrests of other individuals like Mr. Weaver.

153. Under the principles of municipal liability, the City, its policymakers, and the RPD owe a duty to the public at large and to Mr. Weaver to implement policies, procedures, customs and practices sufficient to prevent, deter and avoid conduct by subordinates that violate the constitutional rights of criminal suspects, defendants and other members of the public.

154. However, the RPD and its designees, as policymakers for the City, knowingly and intentionally breached or were deliberately indifferent to this duty.

155.     As a direct and proximate result of the Defendants' acts, Mr. Weaver was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Weaver prays that the Court enter judgment in his favor and order relief as follows:

A.     Compensatory damages against all Defendants, jointly and severally;

B.     Punitive damages against the individual Defendants, jointly and severally;

C.     Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D.     Any other and further relief the Court deems equitable and just.

## IX.   JURY DEMAND

Plaintiff David Weaver respectfully demands a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this the 15th day of June, 2022.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Telephone: (919) 451-9216

Emily D. Gladden (NCSB #: 49224)
Email: Egladden@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
204 N. Person Street
Raleigh, NC 27601
Telephone: (919) 720-4201
Facsimile: (919) 400-4516
*Counsel for plaintiff David Weaver*

21