IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00241-M

| | |
|---|---|
| DAVID WEAVER, | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM IN SUPPORT OF CITY OF RALEIGH'S MOTION TO DISMISS** |
| THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Officer TAYLORE LEGGETT, and Sergeant WILLIAM ROLFE, in their individual capacities, | ) |
| Defendants. | ) |

This matter is before the Court on the City of Raleigh's (the "City") motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's lone claim asserted against it under 42 U.S.C. § 1983. Plaintiff has not plausibly alleged the City's liability. Specifically, Plaintiff has not alleged sufficient facts from which one can reasonably infer that the City has an unconstitutional policy or custom and that such policy or custom caused the alleged constitutional violations, both of which *Monell v. Department of Social Services*, 436 U.S. 658 (1978), requires. As explained below, Plaintiff's claim against the City should be dismissed, and, as a result, the City should be dismissed from this action as a party.

## NATURE OF THE CASE

This case arises out of Plaintiff's arrest on August 23, 2018 based on a warrant claiming Plaintiff had sold cocaine to a confidential informant. (*See* First Am. Compl., DE 31, ¶¶ 2, 3). Plaintiff filed this action on June 15, 2022 against the City, two of its former police officers, Omar I. Abdullah and Taylore Leggett, and Abdullah's supervisor, Sergeant William Rolfe. After the

City filed its answer and the defendant officers filed motions to dismiss, Plaintiff amended his complaint on September 16, 2022. (*Id.*).

Plaintiff asserts a total of six claims. In violation of the Fourth Amendment to the U.S. Constitution, he claims Abdullah, Rolfe, and Leggett maliciously prosecuted him and unreasonably prolonged his detention. (*Id.* ¶¶ 134-50, 178-85). Also, he asserts a state law claim for malicious prosecution against those same defendants. (*Id.* ¶¶ 167-77). In violation of the Fourth and Fourteenth Amendments to the U.S. Constitution, he alleges that Abdullah and Leggett fabricated evidence against him, (*id.* ¶¶ 151-58), and that Leggett failed to intervene to prevent the unlawful conduct, (*id.* ¶¶ 159-66). Finally, he contends the City violated the Fourth Amendment to the U.S. Constitution by failing to train or supervise Raleigh Police Department ("RPD") officers' management and use of confidential informants. (*Id.* ¶¶ 186-95).

Plaintiff seeks compensatory damages from all defendants and punitive damages from the individual defendants, along with attorneys' fees and costs. (*Id.* at 25-26). The City seeks dismissal of Plaintiff's Sixth Claim for Relief and dismissal from this action.

## STATEMENT OF FACTS

According to the First Amended Complaint,[1] Abdullah and another RPD Vice officer recruited Dennis Williams as an informant after they arrested Williams for selling crushed aspirin and representing it to be cocaine. (*Id.* ¶¶ 31, 33-34.) On August 16, 2018, Williams was approved to work as a confidential informant for RPD. (*Id.* ¶ 37). That same day, Mario King allegedly sold marijuana to Williams. (*Id.* ¶ 53). Six days later, on August 22, 2018, King again allegedly sold marijuana to Williams. (*Id.* ¶¶ 53-54). Sergeant Rolfe signed paperwork allowing the release

---

[1] As Rule 12(b)(6) requires, the factual allegations are recited from the First Amended Complaint. This does not mean that the City agrees with those allegations.

of informant funds to Abdullah for use in these sales. (*Id.* ¶ 55). The "undercover buy video" does not depict audio or video of King making any sale, but rather "[t]he video almost entirely consists of a black screen." (*Id.* ¶ 56). Although Abdullah arrested King for these alleged sales, the Wake County District Attorney eventually dismissed the charges against him in March 2020. (*Id.* ¶¶ 53, 57).

On August 22, 2018, 32 minutes after the second alleged sale involving King, Plaintiff allegedly sold crack cocaine to Williams, (*id.* ¶¶ 59, 61), with Sergeant Rolfe authorizing the payment of informant fund to Williams, (*id.* ¶ 69), and supervising the controlled buy, (*id.* ¶ 67). Williams was equipped with an undercover camera to record the transaction, (*id.* ¶ 62), and Plaintiff alleges on information and belief that Sergeant Rolfe and Abdullah observed the live audio and video feed, (*id.* ¶ 67). Williams shielded the camera during the controlled buy, so the recording contains no audio or video evidencing the sale and most of the video is dark. (*Id.* ¶ 63). Plaintiff claims that he never sold cocaine to Williams and that Williams and Abdullah conspired to produce the cocaine and to falsely allege that Plaintiff made the sale. (*Id.* ¶¶ 65-66).

Plaintiff further alleges on information and belief that Sergeant Rolfe approved Abdullah's application for a warrant for Plaintiff's arrest. (*Id.* ¶72). At that time, both Sergeant Rolfe and Abdullah knew "Williams was not reliable, had falsified evidence in the past and should not have been used an informant." (*Id.* ¶ 74). On August 23, 2018, Abdullah and other officers arrested Plaintiff. (*Id.* ¶ 75). An officer searched and frisked Plaintiff, including his crotch area, and located marijuana in his back pocket. (*Id.* ¶ 76).

Leggett and another officer transported Plaintiff to a RPD substation. (*Id.* ¶ 80). Prior to doing so, those officers searched and frisked Plaintiff and found no additional narcotics or contraband. (*Id.* ¶ 79). At the substation, Abdullah asked Plaintiff to work for him as a confidential

informant, which Plaintiff refused to do. (*Id.* ¶¶ 82-83). Abdullah stated, in front of Leggett, that he wanted to strip search Plaintiff for drugs. (*Id.* ¶ 85). Abdullah, accompanied by Leggett, took Plaintiff into a bathroom, (*id.* ¶ 87), where Plaintiff removed all his clothing, as Abdullah instructed, and handed it to Leggett, (*see id.* ¶¶ 95-99, 101). "With Officer Leggett watching, Officer Abdullah produced a brown paper towel and stated, 'yeah we are gonna charge him with this.'" (*Id.* ¶ 103). Abdullah, with Leggett's knowledge and assistance, planted 36 grams of crack cocaine in the paper towel, claiming he found it tucked inside Plaintiff's underwear. (*Id.* ¶ 104). As a result of the events on August 22 and 23, 2018, Plaintiff was charged with trafficking in cocaine by possession and possession and sale of cocaine. (*Id.* ¶¶ 118-19).

Plaintiff further alleges that these acts were part of a conspiracy amongst Williams, Abdullah, and RPD Vice officers, lasting from August 16, 2018 through May 21, 2020, to make at least 29 controlled buys based on fabricated and planted evidence. (*Id.* ¶ 38; *see also id.* ¶¶ 40-52). During the conspiracy, Abdullah violated RPD policies by meeting alone with Williams before and after buys and by always paying Williams without another officer present. (*Id.* ¶¶ 48-49). Plaintiff claims, on information and belief, that all persons arrested based on controlled buys made by Williams have had their criminal charges dismissed or their convictions vacated, including his own.[2] (*Id.* ¶ 39).

The day after the conspiracy ended, RPD suspended Williams as an informant. (*Id.* ¶ 183). Several months later, in September 2020, Abdullah was placed on administrative leave, and eventually his employment with the City terminated in 2021. (*Id.* ¶ 11.) The Wake County District

---

[2] In January 2020, Plaintiff pled guilty to trafficking cocaine and received a sentence of 35 to 51 months imprisonment. (First Am. Comp., DE 31, ¶ 127). On March 13, 2022, Plaintiff completed his sentence. (*Id.* ¶ 129). The following day, on Plaintiff's motion and with the consent of the Wake County District Attorney, a Superior Court Judge vacated Plaintiff's conviction. (*Id.* ¶¶ 128, 130).

4

Attorney's Office is currently prosecuting both Williams and Abdullah for obstruction of justice. (*Id.* at 1 n.1).

**ARGUMENT**

Like any other claim, to survive a motion to dismiss based on Rule 12(b)(6), a claim under § 1983 against a municipality must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, the court accepts all well-pled facts as true and construes those facts in the light most favorable to the plaintiff, but it does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, [or] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Although "a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim," "the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citations omitted).

**PLAINTIFF FAILS TO STATE A PLAUSIBLE *MONELL* CLAIM AGAINST THE CITY.**

Any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who deprives another of a constitutional right faces liability under § 1983. In *Monell*, the Supreme Court held that municipalities may also be liable for a plaintiff's constitutional harms under § 1983, but not based on *respondeat superior*. *Est. of Jones by Jones v. City of Martinsburg, W. Va.*, 961 F.3d 661, 672 (4th Cir. 2020). Rather, municipal liability arises only when city employees take constitutionally offensive acts in furtherance of the city's policy or custom. *Walker*

*v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009). Accordingly, "[a]ny viable § 1983 *Monell* claim has two elements: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *I.P. by Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1231809, at *5 (E.D.N.C. Mar. 9, 2020) (citation, internal quotation marks, and alteration omitted). Plaintiff fails to allege sufficient facts to support either of these elements, and therefore, he has failed to state a § 1983 claim against the City.

### I. Plaintiff Fails to Plausibly Allege Facts Showing the City had an Unconstitutional Policy or Custom.

A "policy or custom" can manifest in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted). At issue here is the third way, as Plaintiff's *Monell*-based claim rests on purported omissions in policies concerning the RPD's management and use of confidential informants. (*See* First Am. Compl., DE 31, ¶ 189 ("[T]he City, by and through the Policymakers, failed to supervise or train and failed to institute the proper policies relating to RPD officers and management and the RPD's use of confidential informants[.]").

Municipal liability "is at its most tenuous" when based on the failure-to-train theory. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Accordingly, a "stringent standard of fault" is imposed. *Id.* A plaintiff must show the municipality was deliberately indifferent to the rights of those persons who interact with the untrained municipal employees. *Id.* "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training

program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (citation omitted).

> In this regard, the Supreme Court has recognized:
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'— necessary to trigger municipal liability."

*Id.* at 62 (citations omitted). "But contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the city and the opportunity to conform to constitutional dictates.'" *Id.* at 63 n.7 (citation and alterations omitted); *see also Est. of Jones*, 961 F.3d at 672 ("At its core, the strict *Monell* test asks for some level of notice.").

"[P]roof of a single incident, without more, is not sufficient to allege the existence of a 'custom, policy or practice' under *Monell*." *I.P. by Newsome*, 2020 WL 1231809, at *6 (collecting cases); *see also Est. of Jones*, 961 F.3d at 672 ("Because *Monell* liability cannot be predicated on a theory of *respondeat superior*, a single incident is almost never enough to warrant municipal liability." (citation omitted)).

> [T]he Supreme Court has left open the possibility that "in light of the duties assigned to specific officers or employees the need for more or different training [may be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"—the so-called *Canton* exception.

*Est. of Jones*, 961 F.3d at 672 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), and citing also *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Even so, "rarely is the lack of training in an area so likely to result in a violation of a constitutional right." *Willis v. Blevins*, 966 F. Supp. 2d 646, 665 (E.D. Va. 2013).

In this action, Plaintiff alleges that RPD policy is deficient by (1) "not requiring supervisor or officer review of video footage taken of undercover controlled buys," (First Am. Compl., DE 31, ¶ 189(a)), and (2) "not recording—whether by audio or video recordings—any officer interaction with confidential informants," (*id.* ¶ 189(b)). The First Amended Complaint fails to state a plausible failure-to-train claim on either basis.

First, Plaintiff has not alleged a pattern of similar constitutional violations sufficient to put the City on notice of any deficiency regarding the training or supervision of RPD officers in the management and use of confidential informants. The only incidents which allegedly occurred before those involving Plaintiff are the two incidents involving Mario King on August 16 and 22, 2018. On those dates, King allegedly sold marijuana to informant Williams, for which Abdullah wrongfully arrested King. (*Id.* ¶ 53). One of those controlled buys occurred within the week prior to the controlled buy between Williams and Plaintiff. (*Compare id.*, *with* ¶ 59). The other occurred just 32 minutes before the controlled buy between Williams and Plaintiff. (*Compare id.* ¶ 54, *with id.* ¶ 61). These incidents, one of which occurred essentially contemporaneously with Plaintiff's, are insufficient to reasonably infer a pattern of misconduct. *See Skeen v. Washington Cnty. Sheriff's Off.*, No. 1:20-CV-00017, 2020 WL 6688550, at *5 (W.D. Va. Nov. 12, 2020) (dismissing the plaintiff's § 1983 failure-to-train and supervise claim against the sheriff because the plaintiff did not plausibly allege a pattern of similar constitutional violations based on two incidences); *I.P. by Newsome*, 2020 WL 1231809, at *6 (concluding the plaintiffs had failed to alleged a custom, policy, or practice under *Monell* based on a single prior incident).

Furthermore, Plaintiff does not allege *any* prior incidents of Abdullah or any other RPD officer planting evidence on suspects after arresting them on a controlled buy. Nor from the facts alleged about the conspiracy between Williams and a few officers could one reasonably infer that

anyone other than the co-conspirators were aware, or should have been aware, of the scheme, which had allegedly begun six days before the controlled buy between Williams and Plaintiff. (*See generally* First Am. Compl., DE 31, ¶¶ 38, 40-52). Plaintiff's allegations fall short of showing any sort of pattern of constitutional misconduct sufficient to put the City's policymakers on notice about issues with RPD's management and use of confidential informants, specifically the fabrication and planting of evidence in conjunction therewith.

Second, the events surrounding Plaintiff's arrest do not show that the need for more or different training was patently obvious. Plaintiff suggests that his arrest based on fabricated evidence of a sale between him and Williams is the obvious consequence of the RPD not having a policy requiring supervisor or officer review of video footage from controlled buys. (*See id.* ¶ 168(a) ("The City's Policymakers were aware that the failure to review undercover buy video— was so obvious and inadequate—that it could result in informants and officers fabricating charges resulting in false arrests or false allegations.")). To the contrary, the type of misconduct at issue here—fabricating and planting evidence and conspiring to do so—is not of the sort that specialized training, such as the review of video footage of controlled buys, would regulate. An objectively reasonable police officer would know that they cannot falsify evidence against a suspect or engage in a conspiracy to do so. No training would have prevented the alleged misconduct, and therefore, the City cannot be held liable. *See e.g.*, *Dorsainvil v. City of New York*, No. 19-CV-2323 (RPK) (SMG), 2020 WL 7249310, at *5 (E.D.N.Y. Aug. 31, 2020) (recommending the denial of the plaintiff's motion to amend his *Monell* failure-to-train and supervise claim based on an allegedly fabricated confession as futile because "to hold a municipality liable because an officer failed to understand such basic principles as 'lying is wrong' would essentially impose *Monell* liability for the ethical lapses of its individual officers"), *report and recommendation adopted*, 2020 WL

9

6482348 (E.D.N.Y. Nov. 4, 2020); *Montgomery v. D.C.*, No. 18-CV-1928 (JDB), 2019 WL 3557369, at *7 (D.D.C. Aug. 5, 2019) (where the plaintiff alleged officers had engaged in illegal conduct, including fabricating inculpatory evidence, recognizing "police officers know, without any additional specific training, not to—for instance—fabricate evidence" (citing *Connick*, 563 U.S. at 64) and dismissing the failure-to-train *Monell* claim for failure to state a claim); *Keefer v. City of Connellsville*, No. 2:17-cv-00332-LPL, 2018 WL 3708665, at *2, 8 (W.D. Pa. Aug. 3, 2018) (where the plaintiff alleged that the city's police officer arrested him based on fabricated and falsified evidence from a confidential informant regarding a controlled buy, concluding the facts did not show there was an obvious need for more or different training and therefore did not state a § 1983 failure-to-train claim against the city); *Brown v. Frazier*, No. 4:12-CV-290-D, 2013 WL 5739091, at *4 (E.D.N.C. Oct. 22, 2013) (concluding the plaintiffs had not plausibly alleged deliberate indifference sufficient to state a claim for *Monell* liability against the sheriff based on a failure to train or supervise) ("The Browns allege, *inter alia*, that the deputies entered the home and criminally assaulted Mr. Brown for no reason, called the Browns criminals and liars, and tried to get an emergency responder to file false criminal charges against Mr. Brown. Although the court deplores the alleged misconduct, no amount of training would prevent this type of alleged misconduct." (citing *Willis*, 966 F. Supp. 2d at 666)); *Willis*, 966 F. Supp. 2d at 666-67 (dismissing the plaintiff's § 1983 failure-to-train, supervise, and control claim under *Monell* against the town for failure to allege sufficient facts to state a claim) ("The alleged violations involve the withholding and fabrication of evidence. Unlike the hypothetical in *Canton*, no amount of training would prevent [the police officer's] alleged misconduct. . . . Withholding and fabricating evidence are commonly governed by personal rectitude rather than professionally imparted skill sets.").

In addition, at the time of the events alleged, Plaintiff's own allegations show that the City had policies pertaining to the RPD's management and use of confidential informants. (*See, e.g.*, First Am. Compl., DE 31, ¶ 26 (alleging the requirements of RPD policy regarding the disbursement of funds to confidential informants); ¶ 48 (alleging Abdullah violated the RPD's policy on the Management of Informants by meeting alone with Williams before and after buys), ¶ 49 (alleging Abdullah violated RPD policy requiring the presence of witnesses for informant payments by always paying Williams without any other officer present); *id.* ¶ 189(b) (alleging "video footage would have shown Officer Abdullah repeatedly violating RPD policy (On the Management and Use of Informant Funds) by meeting with Informant Williams with no other officers present")). As such, the City did not make a decision to disregard all training in this area, and one cannot reasonably infer that the City was deliberately indifferent to the need for some other training based on Plaintiff's incident alone. *See Connick*, 563 U.S. at 67 ("The *Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force. But it is undisputed here that the prosecutors . . . were familiar with the general *Brady* rule. [The] complaint therefore cannot rely on the utter lack of an ability to cope with constitutional situations that underlies the *Canton* hypothetical, but rather must assert that prosecutors were not trained about particular *Brady* evidence or the specific scenario related to the violation in his case. That sort of nuance simply cannot support an inference of deliberate indifference here."); *Est. of Jones*, 961 F.3d at 672 (recognizing that the city had a use-of-force policy and concluding the plaintiff estate's *Monell* claim failed because it could not show deliberate indifference to the need for better or different training on the use of force based on a single incident).

In summary, Plaintiff does not allege facts from which one could reasonably infer the City had an unconstitutional custom or policy regarding the RPD's management and use of confidential informants. Plaintiff's allegations do not show a pattern of prior constitutional violations to demonstrate the City was deliberately indifferent to the need for more or different training in this area. Likewise, his allegations do not show that it was patently obvious the City's training regarding confidential informants was deficient. Because Plaintiff has not plausibly alleged the first element of his § 1983 claim against the City, the claim should be dismissed.

## II. Plaintiff Fails to Plausibly Allege Facts Showing the City Caused the Constitutional Violations.

In addition to failing to sufficiently allege the first element of his claim against the City, Plaintiff has failed to sufficiently allege its second element, that is, the failure to train caused the violation of his rights. As with culpability, a "rigorous standard" of causation is employed to hold a municipality liable under § 1983. *Brown*, 520 U.S. at 405. "[T]he training deficiency 'must be closely related to the ultimate injury,' meaning it must cause the incident." *Est. of Jones*, 961 F.3d at 672 (quoting *Canton*, 489 U.S. at 301). In other words, "the failure to correct the known practices must be such as to make the specific violation almost bound to happen, sooner or later." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210–11 (4th Cir. 2002) (internal quotation marks and citation omitted).

The City's alleged failure to require supervisors or officers to review videos of controlled buys or to require recording of all officer interactions with confidential informants did not cause the falsification of evidence against Plaintiff (or the conspiracy to do so) for several reasons. First, Plaintiff alleges, on information and belief, that Abdullah and his supervisor, Sergeant Rolfe, viewed the live feed of the controlled buy involving Williams and Plaintiff. (First Am. Compl., DE 31, ¶ 67). Assuming this allegation is true, a policy requiring Abdullah and

12

Case 5:22-cv-00241-M-RN     Document 42     Filed 10/07/22     Page 12 of 16

Sergeant Rolfe to review the video, presumably after the controlled buy, would have been of no consequence. Second, the two alleged deficiencies in RPD policy pertain to confidential informants. Because Abdullah's alleged planting of evidence on Plaintiff, with Leggett's knowledge and assistance, did not involve a confidential informant, neither policy, had it been in effect, would have prevented that alleged misconduct. Finally, and most importantly, all the officers' alleged misconduct is purportedly criminal in nature and therefore was not caused by any deficiency in the City's training of police officers. *See Keefer*, 2018 WL 3708665, at *8 ("In the present action, there is only speculation that a lack of training caused [the officer] to allegedly fabricate and falsify evidence while utilizing a confidential informant leading to Plaintiff's arrest and alleged malicious prosecution."); *Brown*, 2013 WL 5739091, at *4 ("The deputies' alleged misconduct in this case was not caused by the failure to give specific training, but by the alleged miscreant deeds of the deputies."). The alleged deficiencies in the RPD's policy regarding the management and use of confidential informants did not make Plaintiffs' alleged constitutional violations almost bound to happen, sooner or later. Because Plaintiff has not plausibly alleged this second element of his § 1983 claim against the City, he fails to state a claim for this additional reason.

## CONCLUSION

As detailed above, Plaintiff's First Amended Complaint does not plausibly allege an unconstitutional policy or custom of the City caused the deprivation of his constitutional rights. Accordingly, the City respectfully requests that the Court grant its motion, dismiss the claim that Plaintiff asserts against it (the Sixth Claim for Relief), and dismiss it as a party.

This the 7th day of October 2022.

                              **CITY OF RALEIGH**
                              **Robin L. Tatum**
                              **City Attorney**

By:    /s/ Dorothy V. Kibler
          DOROTHY V. KIBLER
          Deputy City Attorney
          N.C. Bar No. 13751
          PO Box 590
          Raleigh, NC 27602
          Tel: (919) 996-6560
          Fax: (919) 996-7021
          Dorothy.Kibler@raleighnc.gov

By:    /s/ Amy C. Petty
          AMY C. PETTY
          Senior Associate City Attorney
          N.C. Bar No. 20894
          PO Box 590
          Raleigh, NC 27602
          Tel: (919) 996-6560
          Fax: (919) 996-7021
          Amy.Petty@raleighnc.gov

*Attorneys for City of Raleigh*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00241-M

| | |
|---|---|
| DAVID WEAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **CERTIFICATE OF SERVICE** |
| THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Officer TAYLORE LEGGETT, and Sergeant WILLIAM ROLFE, in their individual capacities, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

I hereby certify that on the 7th day of October 2022, I electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF CITY OF RALEIGH'S MOTION TO DISMISS** with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, North Carolina 27701
Email: schewel@tinfulton.com
*Counsel for Plaintiff*

Jason Benton
Jessica Dixon
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, North Carolina 28202
Email: jasonbenton@parkerpoe.com
*Counsel for Defendant Abdullah*

Norwood P. Blanchard, III
Crossley McIntosh Collier & Edes, PLLC
5002 Randall Parkway

Emily D. Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, North Carolina 27601
Email: Egladden@tinfulton.com
*Counsel for Plaintiff*

Leslie Packer
Michelle Liguori
Ellis & Winters, LLP
4131 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612
Leslie.packer@elliswinters.com
Michelle.liguori@elliswinters.com
*Counsel for Defendant Leggett*

15

Wilmington, North Carolina 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Respectfully submitted,

                **CITY OF RALEIGH**
                **Robin L. Tatum**
                **City Attorney**


By:    /s/ Amy C. Petty
        AMY C. PETTY
        Senior Associate City Attorney
        N.C. Bar No. 20894
        PO Box 590
        Raleigh, NC 27602
        Tel: (919) 996-6560
        Fax: (919) 996-7021
        Amy.Petty@raleighnc.gov
        *Attorney for City of Raleigh*